I'm not trying to rush you, but you can come forward whenever you're ready. May it please the Court, Counsel, discovery tools, such as depositions,  The process starts with pleading a case and then discovery proceeds based on the outlines of the pleadings, not using things such as depositions as traps or gotchas. In this case, there was a question that was asked in the deposition, having the pleadings in place, knowing that key causes of action, demotion and constructive discharge were central to the case, asked a question that didn't include even the word discrimination. What are the acts that you're complaining about? It's a broad question given a broad answer by someone who's not an attorney. Well, Counsel, it seems to me it's not a legal question necessarily. I'm going to respond to this. It is just a question. Your client was being asked by the defense counsel, now let's make sure we've got a obviously not using the words, of all the things you're alleging my client did. I'm not asking to put it under Title VII or put it under 1981 or put it under something else. Tell me the acts. And opposing counsel in its brief response that when at the deposition, there's a break thereafter, I mean, at what stage, and you could have talked to your, not you, I don't know who was doing the deposition, could have talked to the witness. You could, in the errata sheet, filed later, I assume, after the deposition, transcripts done, something like this could be addressed. When does it become foreclosed, do you mind? Never? I mean, can the defendants never really pin down the plaintiffs? Now, before we go to summary judgment, what's everything you're claiming we did? Two parts of that, when, and what. I'll come back to the when. So, well, which includes the what, in the deposition, in the deposition, she actually talks about demotion and constructive discharge. She's complaining about that. In that deposition, there's no surprise. The attorney doesn't then say, wait a minute, you told me earlier that you didn't include those in that list. What gives? Why are you now talking about demotion and constructive discharge when you didn't give me that list? Because there's no surprise. Because they know what they were talking about. Her answer included what she thought was the system failure. It was, they didn't investigate when I made complaints. They didn't listen to me.  was discrimination based on gender and sex. That's the answer. And that, actually, it's an all-inclusive answer. When I complained, they didn't come and figure it all out. They, including the demotion and the constructive discharge. The when, the when, I would say depositions are not trial. At trial, a party such as the plaintiff goes first, puts their testimony on, lays out their whole case, subject to cross-examination, subject to rebuttal. So, the light was red on direct. The light is green on cross. When are you allowed to then contradict that again? Even at trial, no, the light was red. And we do that all day. The light was red, the light was green, the light was red. So, that should be able to be done at summary judgment or at trial because it's not a trial issue. It's not a foreclosed issue. It's not, it should not rise to the level of an admission. If it's a formal request for admission, it says, is this everything you have? Admit that demotion is not part of it. Is there an objection? Is there an opportunity for you to object to the viewpoint of the judge in saying, in concluding that the issues had been thus narrowed? Yes, in the, yes, yes. At what point did you actually enter an objection to that before the district court? Well, there was a response to the motion for summary judgment, and I wasn't involved in that stage, but the, we came back and said, I mean, the response includes that that was in the deposition. She talked about that. And then we have, that was the issue that I brought back with a motion to reconsider and rule 59E and said, no, actually, I didn't do that. I didn't do that. But that, I mean, it's well before the court here. Well, could I ask you, which is picking up on my colleague's question, is this correct that Lockheed Martin in this motion for summary judgment made the argument that your issues had been narrowed because of the deposition? And in the response to that, why summary judgment should be denied, there was no counter. There was no argument. No, no, no, it doesn't work that way. I forget your phrasing earlier. Facts are for trial and not for, I don't know, whatever your point was. That was, was that raised in the opposition to summary judgment? I don't think it was. So, I mean, fair or unfair, doesn't that constitute waiver or forfeiture? I don't think it should, Your Honor. I do not think it should. Why? Because, because the judge knows better. The judge knows better. Because if counsel doesn't argue, yeah. In other words, responding to the issue that Judge Southwick asked, is why should it not be constituted waiver if you don't object? I mean, make some indication to the court that that is an incorrect assumption on his part that it has been narrowed. So, When is the first time you objected or let it be known that the district court was in error to say that the issues had been narrowed? When? You never let the judge know that? I mean, 59A. I can't remember if I put that in the motion to reconsider, Your Honor. I can't remember if I put that in. But that would be the earliest. That would be the earliest for this appeal. I mean, that he used that in, he used it in the summary judgment, right? But when I used it in the summary judgment on the motion for reconsideration, you did raise that issue. On the motion to reconsider, I can't remember if I raised that issue. I think I only raised the issue of comparators not needing comparators in the retaliation. So you have never raised that issue until appeal? Is that correct? That may be correct. So you never said the judge erred in narrowing the issues until appeal? Right. All right, counsel. Okay. Keep going. All right, so, all right, so, I would still argue that on the face of the record, this is de novo, this is de novo, that demotion or constructive discharge should still be there. It is hard to say that demotion is not part of the case when she testified to the case. When it's in the record, this court can look at it with fresh eyes. The retaliation, I think the court got it right the first time, and then reexamined it. There's this unusual standard of manifest error, which I know that's the law, but I'm not sure I understand it because it's all de novo. And so should the court look at manifest error at changing the court's own mind when there was another motion to reconsider that decision? Should that have been manifest error? Did the judge examine manifest error? I think it should be, at least in the future, might consider that each of these are de novo. Fine if the court wants to stop, say I don't want any more motions to reconsider, but to have a higher standard for an error of law on a motion. What was the judge talking about specifically when he said the issue is narrowing? He's talking about simply the discrimination case and not retaliation or FLMA? So what he found in the first is no discrimination, but there was retaliation. And he found there was retaliation because there was comparators. And then there was, because of a pretrial brief, he wanted to reconsider that and ask for rebriefing. There was rebriefing, and then he found that because there's no comparators, there's no retaliation. You don't need comparators and retaliations. It's a timeline plus pretext. In addition, you have direct evidence, some direct evidence. So what we have on the retaliation for both FLMA and discrimination is reports of discrimination to HR and management, reports of complaining about time off that included FMLA, and then very close to that, an investigation, not of her complaints, but investigation of her. And the investigation is centered around the things she's complaining about that her subordinates are discriminating against her. They turn it around and say she is harassing them. Most of that's refuted, all except for they say she has leadership responsibilities, she has attendance problems, and the harassment, which includes the comments. There's no leadership. You have that timeline that they demote her and they suspend her, and if demotion's not part of it, okay, but they still suspend her, and it's just pretext. Did she have poor leadership? No, she had excellent leadership or personal performance reviews say that and praise her for her leadership. She refutes it. They don't follow their policies. They don't follow their policies in investigating. They don't follow their policies in progressive discipline. They didn't follow their policies with the review board, not having authority to actually demote anybody. They didn't, there was investigation irregularities. One of the investigators said that they were being forced to change the investigation and then objected to the discipline being provided. The only thing that they have that's admitted... Retaliation for what? Reporting discrimination, taking FMLA leave. I mean, but all of this occurred before she had filed a charge, correct? Yes. So the law still prevents retaliation. Maybe participation as a witness before or after a charge, but the law protects opposition to discrimination and protects taking FMLA. Her retaliation for, how would you classify it? For opposing practices made unlawful? Yes. So she said that she was being treated differently as a woman and as a black person. And in fact... Did she show any comparators at all? She did. She said that it was, and the judge in the first opinion said she showed comparators. In the second opinion, he said she wasn't specific. Tell me, what were the comparators that she referred to? Her colleagues. Beg your pardon? She said her colleagues in the court, in the first opinion said she had comparators, her colleagues. She just said her colleagues generally. Yes. And the second opinion... That doesn't satisfy really with respect to, without further specifics. Right, so the question is, that has to do with whether or not there was discrimination. Separate from comparators, there can be inferences because of stereotyping or comments of which there were both. But separate from that, in retaliation, you do not need a comparator. It does not require that, and this court doesn't necessarily require it. It does need comparators, but it does need, she needs the alleged retaliation for a practice made unlawful by Title VII, I guess, or something. She needs, it doesn't actually have to be unlawful. She needs a good faith basis for that to be unlawful. So if she can't provide comparators, but she is opposing it, they know she's opposing it, and then there's retaliation, that's protected. I understand that. Okay. So, regardless of no demotion, regardless of no discrimination, we do have, we do have, at least from the suspension, the retaliation for discrimination and FMLA. And explain to me. I would say. Why this is in such intolerable conditions that required her to resign instead of. So the intolerable conditions include both tangible demotion and suspension, and then the harassment, the sham investigation, the humiliation, the continued harassment by not only her subordinates, but her peers. And then the comment by the investigator that it probably would be a good idea if you did leave. If you did? Did leave. So all of that together would be enough. On the one hand, hostile work environment, on the other hand, tangible. And put those in the mix, maybe it doesn't rise to hostile work environment completely, but you put in the tangible demotion and the investigation, that should be enough for a fact issue. All right, counsel. Thank you. May it please the court, Steve Fink for Lockheed Martin. Your Honor, I've been doing this now for 46 years and my hearing isn't what it used to be. And I had a little trouble hearing some of what counsel says if I speak too loudly, it's because I want to make sure he hears what I say. Well, he did not concede the case in case you wanted him. Keep going. Thank you, Your Honor. I mean, as a late comer to this case myself, I'm relying heavily, of course, on the very thorough and excellent brief followed by my colleagues, Ms. Barbary and Mr. Prude, both of whom are very new first-time parents, which is why I am here in their place. Now, counsel and his brief begins with what I consider a very novel argument and ends with what I consider to be some cutting-edge arguments about employment discrimination laws. So I'm going to start with the novel argument and end with the cutting-edge issues and in the middle talk about the actual evidence that was pointed to here on discrimination and retaliation. The novel argument is the one Your Honors have already asked about, and that is this notion of waiver by deposition. Judge O'Connor found waiver below because in response to a motion for summary judgment, which made this point, the point that she had limited her claims to race and sex discrimination to certain conduct that were not under this Court's present adverse actions, there was no response. The deposition wasn't corrected. Our brief goes through all the steps that could have been taken to correct that. His raising it in a motion for reconsideration, adequate preservation of the record. Well, that actually, Your Honor, Judge Jolly wasn't raised in the motion for reconsideration. It also wasn't raised in the response to the amended motion. We filed an amended motion for summary judgment because of Judge O'Connor's initial ruling that there was a fact question on retaliation. It wasn't raised there, and it wasn't raised in the motion for reconsideration. As you know, under this Court's presence, failure to raise it in the district court is a forfeiture, but also failure to raise it in a motion, or raising it in a motion for reconsideration also does not preserve it. Although, as I say, this issue was not raised in the motion for reconsideration anyway. Let's put waiver or forfeiture aside for a moment. Was Judge O'Connor's right? Was Judge O'Connor right in saying that the issues actually had been narrowed by the deposition? Yes, Your Honor, he was, yes, he was right, and it's something this Court does all the time. You can read opinions where courts say, in the deposition, the person testified to this, and that limited their claims. There was a very recent decision, Edwin against Clear Harbor's Environmental Services. I don't have a Fed's sub-side, or Fed's second side. It's 2023 Westlaw 4046275, June, in which the Court made that very same statement, and it relied on the fact that in the deposition, the witness had limited, or not said that race was an explanation for the conduct they were complaining of. I mean, no one is saying that you're. That's labeling. Excuse me, what's going on here is, let's say that the complaint plausibly alleged five things that happened that would constitute some sort of violation, Title VII, whatever. In the deposition, the defiant only remembers three of them, and that's actually what was said, I think. You can quote it. I don't quite remember. Is that all you have? That's all I can remember, or some sort of phrase like that. I do wonder, I certainly see where a deponent would not remember everything. There's gotta be a way to correct something like that, I'm not sure exactly whether Judge O'Connor addressed it properly, though if you're right on waiver forfeiture, this looks perhaps more like forfeiture. We don't need to get to that. Well Judge, the thing is, that wasn't the question, and that's one of the things you need to be careful about here, looking at the record. The questions here were, what are you saying, you're complaining that Lockheed Martin did to you because of your race, or because of your sex? Those are very straightforward questions. I have to say, I drafted an outline 35 years ago for employment discrimination case, and my colleagues are still using it. That question has been there, and I've asked it in hundreds of depositions. I mean, it's a logical question. Just tell me, what is it that you say happened to you because of your race or sex? It's not asking them to say what their claims are, say, are you saying it under 1981, or are you saying retaliation? Just say, tell me, why do you feel like you were discriminated against because of your race and sex? And when she answered that question, he followed up and said, now are you sure? These are the things. Yeah, that's right. There was no objection, there was no correction. There in fact was a break in the deposition, and I think my colleague assumed that it was going to be to come back maybe and add that. Didn't happen there, didn't happen in the errata sheet, didn't happen in response to summary judgment, not the amended summary judgment, not the motion for reconsideration. This point was raised for the first time in the appellate brief. But again, even then, even aside from the forfeiture, I think this is a standard question. A motion for summary judgment is an inflection point in a trial, and especially in employment discrimination trials.  And at that stage, you have to have before the judge the evidence that the judge can rely on to decide whether or not there's a fact issue for trial, and that's all Judge O'Connor did here. He just took them at what her testimony was, and it was never corrected, objected to, or argued that the question was inappropriate until we got up on appeal. So again, I think the, although forfeiture ought to dispose of the question, I don't think there's an issue here on the merits either with respect to what I at least considered a very novel argument. With respect to the actual substantive claim, it seems to me one, the argument that was made in the motion for reconsideration that was filed by present counsel is that Judge O'Connor erred in finding, or at least the way he characterized it is finding that comparators, so-called comparators were necessary or a necessary element to prove intentional discrimination. But Judge O'Connor didn't say that. Now, and I will say that issue also, it was raised in the motion for reconsideration, but what happened was we don't believe they actually ever argued that there were any comparators. And we were surprised, and I think they were just as surprised when Judge O'Connor in the initial summary judgment motion said, well, look at the coworkers, the coworkers are comparators. And we pointed out in a trial brief that, well, really, coworkers aren't comparators with a manager or a leader when it comes to that sort of conduct. He said, okay, well, then give me another motion for summary judgment. What was the court looking for, comparators for, for race discrimination or retaliation, or for what? It's a good question, Judge O'Connor. It's a little uncertain. I think at that point, he was talking about retaliation. That ruling was about retaliation. He was saying that, and again, one of the reasons the coworkers weren't comparators were there was no evidence that they had or had not engaged in any protective activity. I mean, we don't believe Ms. Harper had either, but there was no evidence whatsoever about whether they had, so they couldn't have been used as comparators. And when we refiled the motion for summary judgment, Judge O'Connor acknowledged that and said, okay, right, I see what you say. Those are not, those are not comparators. But he didn't stop there. He didn't say, okay, case over, no comparators. He went on and said, and all the other evidence you're pointing to, that isn't enough either on the retaliation question, because that's all that was left, Judge Jolly, at that point. He had already granted summary judgment on the other claims, the race, sex, FMLA, retaliation. It was the Title VII retaliation that was left, and that's where he was initially believed that her, not her coworkers, her team members could be comparators. So, and we're certainly not here arguing that comparators aren't necessary either. I mean, there clearly are situations in which intentional race or sex discrimination or retaliation can be proven without comparators. The problem here is that the evidence, or what they called the evidence they were pointing to as evidence of retaliation, intentional discrimination, whether against a characteristic or against protective activity, simply didn't do that. And it's a pattern you see over and over in these cases. What counsel is pointing to are facts. They try to fit facts within a definition that this court in the past has said may permit an inference of discrimination, and then say, that's it. And what this court does, what Judge O'Connor did, was look at those facts and say, could a reasonable jury take these facts and infer from them, you know, not pretext, not falsity, but intentional race discrimination, the state of mind of the decision makers on the Disciplinary Review Board who decided that suspension and transfer of responsibilities was the appropriate consequence. And he said, no. And I think that is clearly right under this court's precedence. None of the things that were pointed to, none of the so-called contradictions or failure to follow policy, or there was some disagreement among the investigators about how to write the report of the investigation. One wanted to put one part of it in the front, and the other wanted to put the other part of it in the back, and they point to that. And they point to, in an email about the report of the investigation, one of the managers was concerned about retaliation. It's a little unclear whether it was retaliation by Ms. Harper or against Ms. Harper, but either way, they say just mentioning the word retaliation is enough to warrant for a reasonable jury to find that the decision makers were motivated by intentional discrimination. And our point there is none of those qualify, because the question still is, and although lots and lots of academic articles have been written and lots and lots of arguments have been made, probably even in this court, about why it shouldn't be the case, but the law still is, that you have to prove intentional discrimination, which means the state of mind of the decision makers at the time they made the decision. And none of these things address that critical issue, and that's why Judge O'Connor granted summary judgment, not because we pointed out that his reasoning about comparators was wrong, but because of that and the fact that nothing else that they were pointing to satisfied this court's requirements. The, what I call the cutting edge issues that have been raised in this brief are an argument about unconscious bias, organizational liability for discrimination, the famous violin example, negligence as the basis for employment, liability for employment discrimination. And I make two observations about that. One is that when that sort of argument is made, when you revert to arguing that this was unconscious bias or implicit bias or organizational liability or negligence, it's probably a fair indicator that you haven't a lot of confidence in the evidence that you're relying on otherwise to prove intentional discrimination. Second, the court, of course, doesn't have to because these arguments likewise were not raised in the district court. They weren't raised in the motion for reconsideration. They were never mentioned at any point. And I'm saying that upfront. What I'm more interested in is the conviction of intolerable conditions that can support a constructive discharge. How do you respond to that? As Johnny, in this case does not come even close to meeting this court standards for what are required for a constructive discharge. If for no other reason, Ms. Harper testified that six or seven months before any of these events occurred, she was already looking for another job outside Lockheed Martin. Constructive discharge requires- Is that an undisputed fact? Yes, yes, your honor. And in fact, one of the pieces of evidence that they rely on is that in an interaction with the investigator who was investigating, there are actually two investigations. One was an EEO investigation. The other was what Lockheed calls a management skills investigation. They occurred one after the other. But in either, in talking to the EEO investigator, she told the EEOC investigator, Ms. Harper did, that she was thinking she was gonna get a job somewhere else. And the investigator responded, you know, okay, that may make sense. And that's one of the pieces- At what point did that statement of hers occur? Was it after they had begun to investigate her for purposes that ultimately resulted in her demotion and that sort of thing? That particular statement occurred during the EEO portion of the investigation. It was when she was being investigated for using sexual language in the workplace and in particular referring, using the term, you know, pop your cherry to a female employee. That was before the demotions occurred. Correct. Correct. That was before any action was taken on any disciplinary action, before the disciplinary review board had met and made its decision. That's right. And she testified in her deposition that even before then, she was looking for a job outside Lockheed Martin. That was before any implicit threat or facts that might indicate they were going to take some sort of disciplinary action against her. I think, Your Honor, I mean, she was being questioned about sexual comments she made in the workplace. She knows what the company's EEO policy is. I'm sure she probably recognized that it was, you know, it was not good. It's not good when you're being investigated for making sexual comments in the workplace and you're a leader. So there was no action had been taken at that point. And that is when she made the comment that she was looking for other job possibilities. Yes, it was when at the time she was confronted by the EEO investigator, you know, the internal EEO investigator about these comments that she said, I'm thinking I'm going to get a job outside the company anyway. Well, I think, you know, she obviously had some dissatisfactions. There's no question. I mean, the record shows she's a highly skilled, highly skilled employee. The whole issue was about management and her in a leadership role. There was never any question about her skills. It was purely about whether or not she was, she was right in a leadership role. And I'm sure she, she was a marketable commodity. Things were not going, there were things that were happening in the, in the. What do you mean though, if she had, she was a very skilled employee, yet she was failing in the job that was assigned to her? Well, she was, she was, she had problems as a manager, not doing the technical side of the work. She was in contract negotiation work. It wasn't the technical aspects of the work. It was interactions, managing her team, her team's reaction to her and her reaction to her team. And that's why the ultimate decision the disciplinary review board made was simply to transfer her into a non-leadership role. Their intention wasn't, they didn't separate her or impose any other. I mean, there was a two week suspension that otherwise it was simply a transfer because they believe she had very useful skills. It was just she was not succeeding as a leader, you know, as a manager. And those were the circumstances in which the statement was made were about the, about her interactions with her team members as a leader. So again, you know, returning again, just briefly, and I beg the court's indulgence on this. You know, I stood up at this very podium 46 years ago and argued a case to the court that is actually relevant here and is raised in the case itself, as it mentioned, but it's the honest belief doctrine. And one of the arguments made here in the briefing is that the court ought to reject the honest belief doctrine. And, you know, that doctrine I discovered was first announced in the court of appeals in the case I argued here 46 years ago. It's Turner against Texas Instruments, 555 F. Second, 1251, 1977. You remember the panel? I remember one of the panel members was Judge Gee, because I clerked for Judge Thornberry and we shared chambers with Judge Gee. And within a year and a half, I was out here arguing a case to Judge Gee and he wound up writing the opinion, yes. Well, again, the arguments about unconscious bias do not reflect what's happening in the law. The Supreme Court, in four decisions, just handed down and made clear, you know, state of mind is a fact. You know, it's like a judge quoted on saying something else. You know, state of mind is a fact. It's still what is required here. Proof of intentional discrimination. And the court could aid a lot of employment discrimination lawyers and judges dealing with employment discrimination cases by joining the Second Circuit and holding that unconscious bias is, by definition, not intentional or purposeful conduct as required by current law. That case is Norma Vosky against Norris. You know, I have the citation here. Bear with me just a moment. Citation to the clerk. Okay, well, I thought I had it here, but it's a second... If you think we need it, you can provide it to... Send it to us in a letter. Your time is up. Thank you, Mr. Chairman. Thank you. Let me just address the waiver issues. I think there's two different waiver issues we're talking about.  and then the other is a waiver in the deposition. And the other is a waiver of the argument. Right. So, the waiver in the deposition, we've talked about that. The waiver in the argument... So, they made the argument of waiver in their motion for summary judgment. I don't think it was directly addressed in the response for motion to summary judgment other than to say, here it is. There's... Here's the evidence... You have waived it. And then in the motion for summary judgment, the other party, your party opposing you, said you had waived it or forfeited it. And you never responded to it. So... He says you didn't respond to it in the motion for reconsideration. So, the timing is... What are we talking about waived? So... But you never responded to it one way or the other. Other than, here's the evidence. No. So... No. So... They said... They said in their motion for summary judgment, it was waived. In their response, they didn't say, not waived, waived. They just said, here's the information and here's the constructive discharge. You were not the attorney at the time. No. Then the judge says, I agree that it's waived, not because you didn't argue it. The judge didn't say, it's not waived because you didn't argue it. It's waived because you didn't say it in your deposition. But she did say it in her deposition. So, then the question at that stage, what is the standard? Because it didn't say, this court, it sounds like, is saying, you're considering waiver because it wasn't argued in the summary judgment and it wasn't argued in the motion for new trial, in which I filed that, and in which I specifically reserved any other arguments. It says, we're not waiving any other arguments, I'm just going to show the court that it's not correct on looking at comparators in the retaliation. Of course, many times, motions for reconsideration in a new trial, just to rehash something, is frowned upon. Not encouraged to prevent a waiver. So, I was very careful in crafting a motion for a new trial, so that I was not going to include everything specifically. So, the question is, when that decision is made, and could there have been appeal based on that decision? Yes. And should this court have considered the waiver issue on that issue? No other proceedings having occurred. Then the question there is, well, was it weighed by not responding to it directly in summary judgment? That argument had not been made by the judge, and the evidence is there. I would say we should be able to argue that on appeal. It's de novo. That's the argument on the waiver. As to the, again, I don't think that they have addressed the issue of whether or not you need a comparator on retaliation. You do not. So, the only issue is, is there adverse actions based on what's left? If demotion and constructive discharge are somehow waived, what is left? What is left is the suspension and the reprimand is what's left. And that suspension and reprimand should be enough, again, for retaliation for FMLA or for discrimination. Thank you. All right, counsel. Thank you. Thank you both who have picked up this case. After it began, it sounded like, but you have helped us understand the directions we should consider. This case and the others before the morning are under advisement. We are in recess. I was afraid I'd forgotten a case. That's the last case?